**United States District Court**
For the Northern District of California

1

2

3                    UNITED STATES DISTRICT COURT

4                  NORTHERN DISTRICT OF CALIFORNIA

5

6    HULEN T. HARRELL,                      No. C 00-2516 PJH (PR)

7                    Petitioner,            **ORDER DENYING PETITION
                                            FOR WRIT OF HABEAS**
8         v.                                **CORPUS**

9    DON TAYLOR, Warden,

10                   Respondent.
                                        /
11

12        Petitioner, a state prisoner currently incarcerated at the California State Prison -

13   Solano, filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254,

14   challenging his state conviction.  For the reasons set forth below, the petition will be denied.

15

16                              **BACKGROUND**

17        Petitioner was convicted by a jury of first degree robbery, first degree burglary and

18   felony false imprisonment in 1993.  The jury also found true six prior convictions.  With the

19   enhancements for the prior convictions, petitioner was sentenced to 34 years in prison.  As

20   grounds for habeas relief, petitioner asserts the following claims: (1) his due process rights

21   were violated when Justice Chin improperly decided motions on his case while on the state

22   court of appeal, then participated in the denial of petitioner's habeas petition after he was

23   elevated to the California Supreme Court; (2) his Sixth and Fourteenth Amendment rights

24   were violated by the trial court's failure to preserve a jury note and report in-chambers

25   hearings; (3) his Fourteenth Amendment rights were violated with respect to the denial of

26   his motion to disqualify the trial judge; (4) his appellate counsel was ineffective for failing to

27   raise the contention that allegedly false information was admitted at trial; (5) his Sixth

28   Amendment confrontation rights were violated by restrictions placed on his cross-

United States District Court
For the Northern District of California

1  examination of a prosecution witness; (6) his due process rights were violated by the denial

2  of his motion for new trial; (7) his appellate counsel was ineffective for failing to raise all

3  issues petitioner believed were arguable; (8) the trial court erred in failing to give limiting

4  jury instructions regarding the use of his incriminating statements which were obtained in

5  violation of his Fifth Amendment rights; (9) his due process rights were violated in that his

6  statement and confession were involuntary; (10) his prior 1975 conviction was

7  unconstitutional; (11) he was denied the right to counsel and right to be present during

8  critical stages of the criminal proceedings; and (12) his 1983 prior conviction was

9  unconstitutional.

10  **FACTUAL BACKGROUND**

11  Petitioner does not dispute the following facts, which are excerpted from the opinion

12  of the California Court of Appeal:

13  Just before 5:30 a.m. on July 25, 1993, Kim Malcolm was asleep in
   her Oakland home.  When Malcolm heard "banging" at the back of her
14  house, she called 911 from her bedside telephone.  Before Malcolm could
   speak to the operator, she saw a man standing in the doorway of her
15  bedroom.  She was not able to see the intruder's face clearly.

16  Malcolm put the telephone down on her bed without speaking to the
   911 operator.  The operator could hear Malcolm talking to the intruder and
17  recorded their conversation.  After someone hung up the telephone, the
   operator redialed the number but only reached Malcolm's answering
18  machine.  The operator then dispatched the police.

19  Malcolm screamed, asked the intruder's identify, and said: "Please,
   don't hurt me."  The intruder replied: "I won't hurt you.  I'm not into that."  He
20  said he needed money, and Malcolm said she had $40 or $50 in her purse.
   The intruder tied Malcolm's hands and legs but not tightly enough to prevent
21  some movement.  He brought her purse into the bedroom and turned on the
   lights.  When Malcolm started to turn around, the intruder told her not to
22  look at him.  He then searched Malcolm's purse.

23  Oakland Police Officer Bischoff arrived at Malcolm's address at 5:41
   a.m.  He found the back door was broken in half.  Through a window
24  Bischoff saw Malcolm lying face down on a bed with her hands tied behind
   her back. [Petitioner] stood nearby rummaging through a handbag.  Bischoff
25  entered the kitchen and saw [petitioner] running through the dining room.
   Bischoff gave chase, saying: "Police officer, freeze."  [Petitioner] did not stop
26  but was subdued near the front door by Bischoff and Officer Paul Bernard.
   As the officers were handcuffing him, [petitioner] volunteered: "This was just
27  a burglary, nothing more."

28  A search of [petitioner] revealed $38, a pair of work gloves, cording,

2

1   and a belt.  From the floor next to Malcolm's bed, the police recovered a
    hammer with a hatchet on one end, a metal pipe, a screwdriver, and a box
2   cutter.  Other than the cash, none of the items belonged to Malcolm.

3          [Petitioner] waived his constitutional rights under *Miranda v. Arizona*
    (1966) 384 U.S. 436 and signed a written statement admitting he had
4   broken into Malcolm's house and taken money from her purse.  [Petitioner]
    told the police he never intended to hurt Malcolm and did not touch her
5   except to tie her up.

6          At trial, [petitioner] testified that he had been released from Soledad
    Prison the day before the robbery and given $200 in cash.  He took a bus to
7   Oakland, planning to stay with a friend.  Unable to do so, he slept for a while
    in an open garage.  Before leaving, he stole a pair of overalls and some
8   tools.  He decided to enter Malcolm's house, thinking there was no one
    there.  [Petitioner] used the stolen tools to break in the back door.
9
           Once inside, [petitioner] heard a scream.  He ran to the master
10  bedroom and saw Malcolm.  She said, "Please don't hurt me," to which he
    responded: "Hey, I'm not even in here for that.  I'm not into that.... I'm just
11  trying to get something that I could get me a room or a place to stay.  That's
    it....  All I want to do is get me a place to stay, get me enough money so that
12  I can get me a room."  Malcolm told [petitioner] she had about $50.
    [Petitioner] tied Malcolm's hands loosely with some of her clothing to
13  prevent her from calling the police.  When he could not find her wallet, he
    returned to the bedroom and found Malcolm with the telephone. [Petitioner]
14  took the telephone from her and asked where her purse was.  She directed
    him to the kitchen. [Petitioner] tied Malcolm's feet with some clothing he
15  found, had her lie down on the bed, and covered her with a blanket.
    Malcolm told him to take her credit cards, but he left them and took only
16  cash.  The police arrived, pursued him to the front door, and arrested him.

17         [Petitioner] was charged with residential robbery, burglary of an
    inhabited dwelling, and felony false imprisonment.  The indictment alleged
18  nine prior convictions. [Petitioner] filed a number of motions, including a
    motion for self-representation under *Faretta v. California* (1975) 422 U.S.
19  806, and challenges to all the alleged prior convictions.  The trial court
    denied the challenges to the priors and granted the *Faretta* motion.
20
           The trial court dismissed three priors on the motion of the
21  prosecution.  The jury found [petitioner] guilty on all counts, determined that
    the robbery and burglary were in the first degree, and found the remaining
22  six priors were true.  [Petitioner's] posttrial motions were denied.  The court
    sentenced [petitioner] to the upper term of six years for the robbery.  It
23  imposed consecutive terms of sixteen months for the burglary, eight months
    for the felony false imprisonment, five years for each of the five prior serious
24  felonies, and one year for the remaining prior, for a total term of thirty-four
    years.
25
    *People v. Harrell,* No. A067248, slip op. 2-4 (Cal.Ct.App. Jul. 22, 1996); Answer Ex. 9.
26
           Petitioner appealed his conviction, and the California Court of Appeal affirmed the
27
    judgment but stayed the sentence on the false imprisonment conviction, directing that
28

United States District Court

For the Northern District of California

1   petitioner be re-sentenced.  *Id.*  Petitioner was re-sentenced to a term of 33 years, and

2   following a second appeal, the California Court of Appeal affirmed the judgment following

3   re-sentencing on June 11, 1998.  Answer Ex. 8.  Petitioner commenced this federal

4   habeas action on July 7, 1999.[1]  The court ordered respondent to show cause why the

5   writ should not be issued on the cognizable claims.  Respondent has filed an answer, and

6   petitioner has filed a traverse.  The petition is submitted for a decision on the merits.

7                                                **STANDARD OF REVIEW**

8          A district court may not grant a petition challenging a state conviction or sentence

9   on the basis of a claim that was reviewed on the merits in state court unless the state

10  court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or

11  involved an unreasonable application of, clearly established Federal law, as determined by

12  the Supreme Court of the United States; or (2) resulted in a decision that was based on an

13  unreasonable determination of the facts in light of the evidence presented in the State

14  court proceeding."  28 U.S.C. § 2254(d).  The first prong applies both to questions of law

15  and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09

16  (2000), while the second prong applies to decisions based on factual determinations,

17  *Miller-El v. Cockrell*,  537 U.S. 322, 340 (2003).

18         A state court decision is "contrary to" Supreme Court authority, that is, falls under

19  the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to

20  that reached by [the Supreme] Court on a question of law or if the state court decides a

21  case differently than [the Supreme] Court has on a set of materially indistinguishable

22  facts."  *Williams (Terry)*, 529 U.S. at 412-13.  A state court decision is an "unreasonable

23  application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if

24  it correctly identifies the governing legal principle from the Supreme Court's decisions but

25  "unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  The

26  ───────────────────────

27         [1]      Petitioner's original petition was stayed to allow him to exhaust three
    unexhausted claims.  Petitioner returned to this court after exhausting all claims and moved
28  to reopen the action.  The court granted the motion on September 15, 2004, and issued an
    order to show cause on the 12 cognizable claims.

**United States District Court**

For the Northern District of California

1  federal court on habeas review may not issue the writ "simply because that court

2  concludes in its independent judgment that the relevant state-court decision applied clearly

3  established federal law erroneously or incorrectly." *Id.* at 411.  Rather, the application

4  must be "objectively unreasonable" to support granting the writ.  *Id.* at 409.

5  Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual

6  determination will not be overturned on factual grounds unless objectively unreasonable in

7  light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. 322 at

8  340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

9  When there is no reasoned opinion from the highest state court to consider the

10  petitioner's claims, the court looks to the last reasoned opinion.  *See Ylst v. Nunnemaker*,

11  501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir.

12  2000).  Where the state court gives no reasoned explanation of its decision on a

13  petitioner's federal claim and there is no reasoned lower court decision on the claim, a

14  federal court conducts "an independent review of the record" to determine whether the

15  state court's decision was an unreasonable application of clearly established federal law.

16  *See Plascencia v. Alameida*, 467 F.3d 1190, 1198 (9th Cir. 2006); *Himes v. Thompson*,

17  336 F.3d 848, 853 (9th Cir. 2003).

18  **DISCUSSION**

19  **A.    Judicial bias on direct appeal**

20  Petitioner's first claim is that his due process rights were violated by "judicial

21  extrinsic fraud" perpetuated by Justice Ming Chin, who was allegedly biased against

22  petitioner while deciding motions on petitioner's case before the state court of appeal.

23  After Justice Chin was elevated to the California Supreme Court, petitioner alleges that

24  Justice Chin thereafter improperly participated in the denial of petitioner's habeas petition

25  before the state high court.  Pet. at 12.  Petitioner alleges that Justice Chin, while serving

26  on the California Court of Appeal, acted unlawfully to delay petitioner's appeal and "to

27  preclude petitioner from obtaining <u>meaningful</u> appellate review" in order to "pursue

28  [J]ustice Chin's personal a[]genda, financial interest and political ambitions of being

5

United States District Court

For the Northern District of California

1   elevated to the highest State court." *Id.* Petitioner also alleges that Justice Chin violated

2   California Code of Civil Procedure Section 170.1(b) by failing to disqualify himself from

3   deciding petitioner's state habeas petition in the state high court after having participated

4   in the state appellate court decision. *Id.* at 13.

5        The Due Process Clause guarantees a criminal defendant the right to a fair and

6   impartial judge. *See In re Murchison*, 349 U.S. 133, 136 (1955); *Kennedy v. Los Angeles*

7   *Police Dep't*, 901 F.2d 702, 709 (9th Cir. 1989).  There are two general ways in which a

8   defendant may establish that he was denied his constitutional right to a fair and impartial

9   judge.  In some cases, the proceedings and surrounding circumstances may demonstrate

10  actual bias or an appearance of advocacy on the part of the judge, i.e., improper conduct.

11  *See Taylor v. Hayes*, 418 U.S. 488, 501-04 (1974); *Stivers v. Pierce*, 71 F.3d 732, 741

12  (9th Cir. 1995) (civil context).  In other cases, the judge's pecuniary or personal interest in

13  the outcome of the proceedings may create an appearance of partiality that violates due

14  process, i.e. improper influences.  *See id.*

15       When petitioner, as in this case, is alleging improper influences, a federal court

16  must be convinced that a particular influence, "under a realistic appraisal of psychological

17  tendencies and human weakness," poses "such a risk of actual bias or prejudgment that

18  the practice must be forbidden if the guarantee of due process is to be adequately

19  implemented." *Withrow v. Larkin*, 421 U.S. at 47.  Federal habeas relief is therefore

20  limited to those instances where there is proof of actual bias, or of a possible temptation

21  so severe that one might presume an actual, substantial incentive to be biased.  *See Del*

22  *Vecchio v. Illinois Dep't of Corrections*, 31 F.3d 1363, 1380 (7th Cir. 1994) (en banc), *cert.*

23  *denied*, 514 U.S. 1037 (1995).

24       The Supreme Court has found that due process requires disqualification of a judge

25  if he has direct financial interests in the outcome of a case, *see, e.g.*, *Aetna Life Ins. Co. v.*

26  *Lavoie*, 475  U.S. 813, 822-24 (1986) (state justice's opinion established legal proposition

27  which enhanced status and settlement value of two pending cases he filed as plaintiff);

28  *Tumey v. Ohio*, 273 U.S. 510, 520-23 (1927) (judge in criminal case paid only if defendant

United States District Court

For the Northern District of California

was convicted), if he is faced with substantial direct personal insults from a litigant, *see, e.g.*, *Mayberry v. Pennsylvania*, 400 U.S. 455, 466 (1971) (insults so severe that they were likely to strike at the most vulnerable and human qualities of judge's temperament), if he becomes "personally embroiled" in a controversy, *see, e.g.*, *United States v. Galin*, 222 F.3d 1123, 1128 (9th Cir. 2000) (although judge lost patience and repeatedly admonished lawyer, judge need not be disqualified from lawyer's post-trial contempt hearing), or if he had significant prosecutorial and adjudicatory functions in the same case, *see, e.g.*, *Murchison*, 349 U.S. at 134-36 (judge charged two witnesses with contempt and subsequently tried and convicted them).  The cases requiring disqualification all involved "direct, personal [and] substantial" influences on the judges involved.  *See Aetna*, 475 U.S. at 822.  Not surprisingly, therefore, the Supreme Court has found that disqualification was not necessary where similar influences on the judges were not direct, personal or substantial.  *See, e.g.*, *id.* at 825-26 (disqualification not required for justices with only slight pecuniary interests and whose gains were speculative); *Ungar v. Sarafite*, 376 U.S. 575, 584 (1964) (litigant's disobedience and criticism of judge did not require disqualification where judge did not become personally embroiled with litigant); *Withrow v. Larkin*, 421 U.S. 35, 47-55 (1975) (medical board could adjudicate same charges it investigated and decided to prosecute without violating doctor's due process rights).

Petitioner's allegation that Justice Chin was acting under an improper influence, i.e., his desire for an appointment to the state high court, in deciding petitioner's state appeals is without merit.  Petitioner alleges that Justice Chin did not want to bring "unwanted disrepute" to the Alameda County District Attorney's Office or the Superior Court bench by allowing petitioner's claim of "substantial false material evidence" to be heard.  Pet. at 13. Petitioner's sole support for this claim is his allegation that Justice Chin issued a minute order on January 29, 1996, which had the affect of "unlawfully deferring and delaying judicial action on petitioner's trial level filed and then still pending ... petition... in order to preclude petitioner from obtaining meaningful appellate review."  *Id.* at 12.  However, judicial rulings alone almost never constitute a valid basis for bias or partiality, as they "can

United States District Court

For the Northern District of California

only in the rarest circumstances evidence the degree of favoritism or antagonism required"

for such a showing.  *Liteky v. United States*, 510 U.S. 540, 555 (1994).  Furthermore,

respondent has presented evidence showing that the minute order merely deferred the

matter "until appeal is considered on the merits."  Answer Ex. 8.  Later, the appellate court

took judicial notice of the petition and treated it as "simultaneously before this court for

purposes of our decision in this appeal."  Answer Ex. 9 at 15, n.7.

This court is not convinced by petitioner's conclusory allegations that Justice Chin's

alleged interest in winning endorsements from Alameda County for an appointment to the

state high court was of such a particular influence in the review of petitioner's state

appeals that, "under a realistic appraisal of psychological tendencies and human

weakness," it posed "such a risk of actual bias or prejudgment" to raise concerns that due

process was violated.  *Withrow v. Larkin*, 421 U.S. at 47.  Neither is the court convinced

that Justice Chin in these circumstances was faced with a "possible temptation so severe

that one might presume an actual, substantial incentive to be biased."  *See Del Vecchio*,

31 F.3d at 1380.

Lastly, petitioner's claim that Justice Chin improperly failed to recuse himself in

accord with state law, i.e., California Code of Civil Procedure § 170.1(b), is rejected

because violations of state law do not lie in federal habeas corpus.  *See Estelle v.

McGuire*, 502 U.S. 62, 67-68 (1991).

Petitioner is not entitled to federal habeas relief on this claim as the state court's

rejection of this claim was not an unreasonable application of clearly established federal

law.  *See* 28 U.S.C. § 2254(d); *Plascencia v. Alameida*, 467 F.3d at 1198.

**B.    Failure to preserve jury note and report in-chambers hearings**

Petitioner's second claim is that the trial judge erred in failing to preserve a jury note

and report in-chambers hearings, which violated petitioner's right to due process.  Pet. at

27-29.  To whatever extent these claims are constitutionally based, they are factually

without merit.

With respect to the allegedly un-preserved note, respondent has provided a copy of

1   the jury's note, dated December 23, 1993, and bearing the file stamp of the Alameda

2   County Superior Court.  Answer Ex. 12.  Furthermore, the note was explicitly made a part

3   of the record by the trial court at petitioner's request during trial.  Answer Ex. 2 (Reporter's

4   Transcript ("RT") at 995).

5        As for the unreported in-chambers proceedings, petitioner claims that on December

6   22, 1993, the trial court held an "unrecorded in -chambers proceeding" and thereby

7   violated petitioner's constitutional rights.  Pet. at 16-17.  Petitioner offered an audiotape

8   into evidence before the jury to which the prosecution objected.  RT at 615.  The trial court

9   stated that it would have to "review it in chambers" in order to "make a determination as to

10  whether it is appropriate."  RT at 616.  The trial court then proceeded to do so as shown by

11  the record:

12          THE COURT: I'll listen to it and I will decide it. Now you need a
            couple moments to review your documents. While you are doing that, I'll
13          listen to the tape.
                THE COURT: Off the record.
14              We are back in the record in open court.
                The [petitioner] is present, the district attorney is present. The jury is
15          not present.
                I have listened to the tape exhibit G for identification that the
16          [petitioner] asked me to listen to. And having done so, I'm satisfied that it is
            inadmissible hearsay.
17              The objection is sustained.
                Now we are ready to proceed with the jury.
18

19  RT at 619.  There was no error by the trial court who properly retired to chambers to listen

20  to a tape offered into evidence to determine its admissibility.  The fact that he did so is

21  recorded, and the tape itself was made part of the record as an exhibit.  Accordingly,

22  petitioner is not entitled to federal habeas relief on this claim as the state court's rejection

23  of this claim was not an unreasonable application of clearly established federal law.  *See*

24  28 U.S.C. § 2254(d); *Plascencia v. Alameida*, 467 F.3d at 1198.

25  **C.    Denial of motion to disqualify judge**

26          Petitioner claims that he was denied due process when his motion to disqualify the

27  trial judge was denied.  Petitioner filed three motions pursuant to California Code of Civil

28  Procedure § 170.6, which permits a litigant to challenge a trial judge based upon the

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

litigants belief that the judge is biased.  A defendant is limited to a single peremptory

challenge pursuant to § 170.6 for each case.  *See* Cal. Code. Civ. Proc. § 170.6, subd. (3).

Respondent argues that this claim must be denied because a mere assertion of a

violation of state law does not present a federal claim, and cites *Chromiak v. Field*, 406

F.2d 502, 504 (9th Cir. 1969).  Even assuming a federal claim has been presented,

respondent asserts that petitioner has not demonstrated that § 170.6 was violated or that

the state arbitrarily failed to follow its own procedural rules.  *See Hicks v. Oklahoma*, 447

U.S. 343, 346 (1980).  The record shows that petitioner's first challenge was denied as

untimely, the second motion was granted, and the third was denied because petitioner had

already exercised his single peremptory challenge under § 170.6.  Answer at 9-10.

Petitioner challenges the denial of his third motion to disqualify Judge Sarkisian.  Petitioner

claims that he was the victim of judicial bias because Judge Sarkisian reappeared as the

trial judge after he had recused himself whereby "it can be reasonably concluded that trial

judge Sarkisian had allied himself with the prosecutions [sic] case."  Pet. at 36.

Petitioner appeared before Judge Sarkisian on September 20, 1993, for various

pretrial matters.  Judge Sarkisian was not the assigned trial judge at that time.  In fact,

Judge Sarkisian informed petitioner of the following:

> ...I have talked to the presiding judge and he is going to be sitting in
> Department 7 and he has asked that I send the case to Department 7 and
> it will be assigned out of that courtroom, so thank you very much.

RT 09/20/93 at 3.

Subsequently, the case was assigned to Judge Sarkisian.  During a pretrial hearing

on October 7, 1993, petitioner expressed concerns about Judge Sarkisian being the trial

judge because he was also the judge who decided petitioner's motion to suppress.  RT

10/7/93 at 4-5.  He made an "informal request" for the judge to recuse himself, which the

judge denied, apparently for lack of cause, and particularly in light of the fact that a

challenge for cause previously filed by petitioner against him had been denied by a

different judge.  *Id.* at 6.  The next day, petitioner filed a motion to disqualify Judge

United States District Court
For the Northern District of California

1  Sarkisian under § 170.6, but the motion was denied as untimely.  Answer Ex. 1 (Clerk's

2  Transcript ("CT") at 235).

3      On November 2, 1993, Judge Sarkisian ordered the case returned to Department 7

4  for assignment to a new judge for trial due to scheduling conflicts as he stated on the

5  record: "I am in another trial.  So we're going to have to assign your case to another court."

6  RT 11/1/93 at 16.  Contrary to petitioner's claim, there is no evidence in the record to show

7  that this constituted a formal recusal for cause by Judge Sarkisian.  The case was

8  assigned to Judge Marguiles against whom petitioner filed a § 170.6 challenge.  CT at

9  279, 288.  The § 170.6 challenge was granted, and the case was again returned to

10  Department 7 for reassignment.  *Id.* at 279.  The case was reassigned to Judge Sarkisian,

11  against whom petitioner filed another § 170.6 challenge on November 29, 1993.  Because

12  petitioner had already exercised his single peremptory challenge against Judge Marguiles

13  under § 170.6, the motion was denied.

14      Petitioner makes a conclusory statement that Judge Sarkisian's alleged recusal and

15  then reappearance as trial judge means the judge had allied himself with the prosecution.

16  Petitioner offers no evidence to support his claim that having Judge Sarkisian as his trial

17  judge violated due process.  In fact, petitioner makes no allegation of judicial misconduct

18  that occurred after the trial commenced.  Furthermore, the California Court of Appeal in

19  rejecting this claim found that the Judge Sarkisian had afforded petitioner wide latitude

20  during the course of the trial:

21      The record shows that the trial court exercised remarkable patience in
       dealing with [petitioner's] efforts to represent himself. Contrary to
22      [petitioner's] assertion, the trial court did not hold him to a higher standard
       than it held the prosecuting attorney. Indeed, the trial court gave [petitioner]
23      considerable leeway in arguing his numerous motions, challenges, and
       objections as the trial progressed. There is no evidence to support
24      [petitioner's claim].

25  Answer Ex. 9 at 16.

26      Finally, similar to petitioner's first claim that a judge's failure to recuse himself

27  violated his right to due process, *see supra* at 6-8, petitioner has here failed to show

28  improper conduct by the proceedings and surrounding circumstances to demonstrate

11

United States District Court

For the Northern District of California

1  actual bias or an appearance of advocacy by Judge Sarkisian. *See Taylor v. Hayes*, 418

2  U.S. at 501-04.  Nor has petitioner shown that the judge's pecuniary or personal interest in

3  the outcome of the proceedings has created an appearance of partiality that violates due

4  process, i.e. improper influences.  *See id.*  Accordingly, the state court's rejection of this

5  claim was neither contrary to, nor an unreasonable determination of, clearly established

6  Supreme Court precedent.  *See* 28 U.S.C. § 2254(d).

7  **D.    Ineffective assistance by appellate counsel**

8          Petitioner claims that his appellate counsel rendered ineffective assistance in

9  violation of the Sixth Amendment by failing to raise the contention that allegedly false

10  information was admitted at trial.

11         The Due Process Clause of the Fourteenth Amendment guarantees a criminal

12  defendant the effective assistance of counsel on his first appeal as of right.  *See Evitts v.*

13  *Lucey*, 469 U.S. 387, 391-405 (1985).[2]  Claims of ineffective assistance of appellate

14  counsel are reviewed according to the standard set out in *Strickland v. Washington*,

15  466 U.S. 668 (1984).  *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989); *United States*

16  *v. Birtle*, 792 F.2d 846, 847 (9th Cir. 1986).  A defendant therefore must show that

17  counsel's advice fell below an objective standard of reasonableness and that there is a

18  reasonable probability that, but for counsel's unprofessional errors, he would have

19  prevailed on appeal. *Miller*, 882 F.2d at 1434 & n.9 (citing *Strickland*, 466 U.S. at 688, 694;

20  *Birtle*, 792 F.2d at 849).

21         Appellate counsel does not have a constitutional duty to raise every nonfrivolous

22  issue requested by defendant.  *See Jones v. Barnes*, 463 U.S. 745, 751-54 (1983);

23  *Gerlaugh v. Stewart*, 129 F.3d 1027, 1045 (9th Cir. 1997); *Miller*, 882 F.2d at 1434 n.10.

24  The weeding out of weaker issues is widely recognized as one of the hallmarks of effective

25

26         [2]      Although the right to the effective assistance of counsel at trial is guaranteed to
27  state criminal defendants by the Sixth Amendment as applied to the states through the
   Fourteenth, see Lucey, 469 U.S. at 392, the Sixth Amendment does not address a defendant's
28  rights on appeal; the right to effective state appellate counsel is derived purely from the
   Fourteenth Amendment's due process guarantee, *see id.*

United States District Court
For the Northern District of California

1  appellate advocacy.  *See id.* at 1434.  Appellate counsel therefore will frequently remain

2  above an objective standard of competence and have caused his client no prejudice for

3  the same reason – because he declined to raise a weak issue.  *Id.*

4       The allegedly false information petitioner is challenging is the testimony of officers

5  Bernard and Bischoff.  Petitioner alleges that Officer Bernard gave false testimony on the

6  witness stand and that he perjured himself.  Pet. at 40.  Petitioner alleges that Officer

7  Bischoff wrote and filed a false police report and gave false and misleading testimony at

8  trial.  *Id.* at 41.  Petitioner's claim fails because even if appellate counsel erred in failing to

9  raise this claim on appeal, petitioner fails to show prejudice, i.e., but for counsel's failure,

10  he would have prevailed on appeal.  *Miller*, 882 F.2d at 1434 & n.9.  According to the state

11  appellate court, "there was overwhelming evidence in support of the jury verdict."  Answer

12  Ex. 9  at 17.  The evidence included the following: (1) petitioner was arrested in the

13  victim's home after she dialed 911, RT at 298, 473; (2) the 911 tape revealed the victim

14  confronting petitioner, RT at 304, 344-48; (3) "the police caught [petitioner] in the victim's

15  home, looking through her purse while she lay bound on the bed beside him," Answer Ex.

16  9  at 16; (4) petitioner signed a written confession admitting that he broke into the house,

17  bound the victim, and took money from her purse, RT at 392-94; and (5) petitioner testified

18  at trial, again confessing that he broke into the house, bound the victim, and took money

19  from her purse, RT at 640-52.  In light of this overwhelming evidence, including petitioner's

20  own written confession and testimony at trial, it cannot be said that petitioner would have

21  prevailed on appeal but for appellate counsel's failure to raise claims of false testimony

22  prosecution witnesses.  This claim does not warrant federal habeas relief as the state

23  court's rejection of this claim was not an unreasonable application of clearly established

24  federal law.  *See* 28 U.S.C. § 2254(d); *Plascencia v. Alameida*, 467 F.3d at 1198.

25  **E.     Sixth Amendment right to confrontation**

26       Petitioner claims that he was denied his right to confrontation under the Sixth

27  Amendment when the trial judge limited his cross examination of a prosecution witness.

28  Petitioner alleges that his defense was based on "mistake of fact, conspiracy to frame

United States District Court

For the Northern District of California

[petitioner], police manufacture of corpus delicti for residential robbery, and the defense of necessity brought about by inhumane living conditions, and the god [sic] given right to food, shelter, and clothing." Pet. at 52. To prove the police-related defenses, petitioner alleges that the needed to show that Bischoff "fabricated his arrest of [petitioner] and falsified his prepared crime reports and then came into court and other administrative hearings and perjured himself under oath while testifying." *Id.* To this end, petitioner sought to play a tape of Officer Bischoff's testimony from petitioner's parole revocation hearing with which he intended to cross examine Bischoff "regarding his inconsistent and contradictory testimony." *Id.* Petitioner claims that the trial court's refusal to allow him to play the tape violated his Sixth Amendment right to confrontation and coss-examination.

In a criminal prosecution, a defendant has a constitutional right to confront witnesses against him. *See Pointer v. Texas*, 380 U.S. 400, 406-407 (1965). Undue restrictions on a criminal defendant's confrontation of a prosecution witness may deprive him of this right. *Davis v. Alaska*, U.S. 308, 318 (1974). The right to cross-examine includes the opportunity to show not only that a witness is biased, but also that the testimony is exaggerated or otherwise unbelievable. *Fowler v. Sacramento County Sheriff's Dep't*, 421 F.3d 1027, 1035 (9th Cir. 2005) (quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 51-52 (1987) (plurality)). Even if cross-examination is not certain to affect the jury's assessment of the witness's reliability or credibility it may implicate the Sixth Amendment right to confrontation if "a jury 'might reasonably' have questioned the witness's reliability or credibility in light of the cross- examination." *Id.* (quoting *Van Arsdall*, 475 U.S. at 679). However, not every restriction on a defendant's desired method of confronting a witness's credibility is a constitutional violation. *See Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam). The Confrontation Clause does not prevent a trial judge from placing reasonable limits on relevant evidence based on concerns of harassment, prejudice, confusion of issues, witness safety or interrogation that is repetitive or only marginally relevant. *See Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

United States District Court
For the Northern District of California

1    During the trial, Officer Bischoff testified for the prosecution and gave direct

2  testimony of his dispatch to the scene and what occurred after he arrived at the victim's

3  house.  Officer Bischoff's testified that he found the back door broken in half, and when he

4  looked through a window into the house, he saw a woman bound on the bed and a man

5  going through a purse.  RT at 456-62.  Officer Bischoff testified that he kicked and forced

6  the back door open, chased petitioner through the house, and arrested him in the living

7  room.  *Id.* at 465-70.  Officer Bischoff stated that he transmitted information of what was

8  transpiring at the house through his handheld walkie-talkie over the radio to other officers.

9  *Id.* at 467.  A tape of Officer Bischoff's broadcast from inside the house was played for the

10  jury.  *Id.* at 471-72.

11    Petitioner, acting as his own attorney, was given an opportunity to cross-examine

12  Officer Bischoff immediately following his direct testimony.  *Id.* at 474.  His cross-

13  examination ranged from the initial dispatch to the scene, the condition of the front and

14  back doors, and what could be seen from the bedroom window.  *Id.* at 474-80.  Petitioner

15  extensively used the taped broadcast to cross-examine the officer, playing different

16  portions of the tape eleven times throughout the examination and then questioning the

17  officer thereon.  *Id.* at 488-504.  Cross-examination of Officer Bischoff was continued to

18  the next day, when petitioner played the tape again and asked more questions about it.

19  *Id.* at 530.  Petitioner began to question Officer Bischoff about prior inconsistent

20  statements, and the following exchange occurred:

21        Q: Is there any time during your testimony at any other proceeding,
    in relationship to what you have stated here, that's inconsistent with your
22     testimony here?
        A: You would have to go through the record. I don't have the record
23  of all my testimony, every proceeding I went to. As far as I understand, no.
        Q: You have never given an inconsistent statement?
24        A: Have you got a particular –
        [PROSECUTION]: Your Honor; argumentative.
25        [PETITIONER]: I was just asking.
        THE COURT: Just a moment.
26        The objection is sustained. It is not an appropriate question.
        Q: Well, have you ever stated, I'll give you an example, that you
27  obtained certain information before or after the arrest?
        A: That's vague. I don't understand that.  Have you got something
28  specific you are unsure of? Because I don't understand what you are

15

asking.

> Q: Okay. At a prior hearing, you testified, since you wanted specifics; right? At a prior hearing, you testified that, when you got to the back, there was not a fence there. That's the specific questions. And I want to know, at that time what you testified that there was no fence there –
>
> [PROSECUTION]: Your Honor, this has been asked and answered.
>
> THE COURT: We have been over this.
>
> Do you have some point in the prior testimony that you want to refer the witness to, Mr. Harrell, some arguably inconsistent statement that he may have made?
>
> [PETITIONER]: Yes, I do, Your Honor, because during these proceedings, he stated that, uh, yes, it was a fence there. He already testified.
>
> [PROSECUTION]: I believe that's misstating the evidence, Your Honor. I don't think the witness stated that there was or wasn't.
>
> THE COURT: That was my recollection .
>
> THE WITNESS: I didn't recollect that there was or wasn't.
>
> THE COURT: There's no basis, then, for the, for that question.
>
> We have to move on, Mr, Harrell. Thank you. Move to another area, please.

*Id.* at 536-37.  Thereafter, petitioner completed his questioning without offering any prior testimony to use for impeachment, and the witness was dismissed after petitioner indicated that he had no further questions for Officer Bischoff.  *Id.* at 564.  It is clear from the record that petitioner was afforded ample opportunity to cross examine Officer Bischoff while he was on the stand.

The tape which petitioner claims the trial court did not permit him to use in violation of his right to confrontation was offered into evidence during the defense case. Specifically, the tape was of petitioner's parole revocation hearing on August 30, 1993, at which petitioner alleges Officer Bischoff was "talking about this offense" under oath. *Id.* at 617.  The trial court asked for an offer of proof with respect to the tape, and the following proceedings took place:

> THE COURT: The jury has left the courtroom.
>
> Let me just ask a question. And I'm going to give you time to look through your records for other exhibits, Mr. Harrell.
>
> This exhibit G is entitled "Hulen Harrell C-33747, copy, revocation hearing, August 30, 1993.
>
> Is this a tape of a parole revocation hearing? Is that what this is?
>
> [PETITIONER]: It is, Your Honor.
>
> THE COURT: All right.
>
> And this is testimony, I presume, presented by you and officer –
>
> [PETITIONER]: – Bischoff.
>
> Yes, it is.
>
> THE COURT: That's what it is.

16

1    [PETITIONER]: It is not hearsay, it is his actual testimony on the record, under oath.

2    THE COURT: I understand. That's the offer of proof?
     [PETITIONER]: Pardon me?

3    THE COURT: That's your offer of proof with respect to this? That's your representation as to what this is?

4    [PETITIONER]: That it is his testimony?
     THE COURT: Yes.

5    [PETITIONER]: Yes, it is his testimony.
     Now if you want to –

6    THE COURT: I believe it is, if you tell me it is his testimony.
     [PETITIONER]: You will hear more there if you listen to it.

7    THE COURT: I accept your word that it is his testimony. I'm trying to see if we can expedite it.

8    [PROSECUTION]: It is hearsay, Your Honor. So far there's been no offer of relevance to this hearing.

9    THE COURT: The objection is sustained to G.
     [PETITIONER]: Your Honor.

10   THE COURT: Yes, sir.
     [PETITIONER]: Can I make an offer of relevancy on this.

11   THE COURT: I thought you had. Do you have something to add?
     [PETITIONER]: No. You didn't ask me about the relevance.

12   THE COURT: You just said it was his testimony. You tell me the relevancy of it.

13   [PETITIONER]: Your Honor, the relevancy of it is this. Now I am entitled under impeachment or rebuttal to present rebuttal evidence, and

14   that constitutes rebuttal evidence, Your Honor.
     THE COURT: In what sense?

15   [PETITIONER]: In what sense? He's testified to various things in this trial.

16   THE COURT: Yes, sir.
     [PETITIONER]: On that tape, many of those details, if you want me

17   to go into detail – I can't. Okay. But –
     THE COURT: You are saying this contains inconsistent statements?

18   [PETITIONER]: It does. That's exactly what it contains.
     THE COURT: I'll listen to it and I will decide it.

19   Now you need a couple moments to review your documents. While you are doing that, I'll listen to the tape.

20   THE COURT: Off the record.
     We are back on the record in open court.

21   The [petitioner] is present, the district attorney is present. The jury is not present.

22   I have listened to the tape exhibit G for identification that the [petitioner] asked me to listen to. And having done so, I'm satisfied that it is

23   inadmissible hearsay.
     The objection is sustained.

24   Now we are ready to proceed with the jury.
     [PETITIONER]: Yes.

25   But, uh, Your Honor, that wasn't my actual offer. My offer was dealing with rebuttal.

26   THE COURT: I understand what you are saying. It is, the evidence is relevant but it is not admissible evidence. If anything, it is consistent with

27   his testimony at the trial.
     In any event, it is inadmissible hearsay.

28   [PETITIONER]: So you are saying I can't impeach the witness with

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

that?
      THE COURT: Yes. The witness has been excused. That evidence on that tape will not be heard by the jury.
      [PETITIONER]: And I can't use it as rebuttal evidence, during rebuttal?
      THE COURT: Correct.

*Id.* at 617-20.

Petitioner claims that denying him the use of the tape to impeach Officer Bischoff's testimony amounts to a denial of his right under the confrontation clause. This is simply not the case. Instead of offering the tape during his cross examination of Officer Bischoff, petitioner waited until the witness has been excused. Petitioner clearly understood how to use a tape for impeachment purposes, as shown by his extensive use of the broadcast tape from the incident to cross-examine Officer Bischoff. *See supra* at 15-16. Petitioner's failure to use the parole hearing tape for impeachment purposes at the proper time, i.e., during cross-examination, may have been due to trial strategy or an ignorance of trial procedures. Even so, the trial court did not violate petitioner's constitutional right to confront witnesses by its decision to exclude potential impeachment evidence as inadmissible hearsay in accordance with the state rules of evidence. Furthermore, the trial court listened to the tape in camera and found that Officer Bischoff's statements thereon were not inconsistent with his in-court testimony contrary to petitioner's claim: "I understand what you are saying. It is, the evidence is relevant but it is not admissible evidence. If anything, it is consistent with his testimony at the trial." *Id.* at 619:24. Therefore, it cannot be said that "a jury 'might reasonably' have questioned the witness's reliability or credibility" had petitioner properly used the tape to attempt to impeach Officer Bischoff during the cross examination. *Fowler*, 421 F.3d at 1035 (quoting *Van Arsdall*, 475 U.S. at 679). Accordingly, the state court's rejection of this claim was not an unreasonable determination of clearly established federal law. *See* 28 U.S.C. § 2254(d); *Plascencia v. Alameida*, 467 F.3d at 1198.

**F.    Denial of motion for new trial**

Petitioner next claims that he was denied due process when the trial court denied

United States District Court

For the Northern District of California

1   his motions for a new trial based on the following: (1) trial court abused its direction in

2   denying petitioner a "necessary continuance in order to obtain trial juror declarations,"; (2)

3   trial court denied petitioner the right to an investigator to investigate juror misconduct; (3)

4   petitioner was unfairly surprised by the prosecution's production of bailiff McKenzie as a

5   material witness in connection with petitioner's jury misconduct allegations; (4) trial court

6   erred in conducting an unrecorded ex parte communication with bailiff McKenzie; (5)

7   petitioner was denied his Sixth Amendment right to present juror witnesses on his behalf

8   during the motion for new trial hearing; (6) multiple instances of juror misconduct denied

9   petitioner his right to a fair trial; (7) trial court erred in denying petitioner use of statutorily

10  authorized additional peremptory challenges; and (8) trial court erred in denying

11  petitioner's *Wheeler* motion.  Pet. at 65.  The first six claims involve the allegation of juror

12  misconduct and will be addressed together, and then claims 7 and 8 separately thereafter.

13        **1.      Juror misconduct**

14        Petitioner raised the issue of potential juror misconduct on December 23, 1993, and

15  had the following exchange with the trial court:

16        [PETITIONER]: One item Your Honor. Yesterday when the jury was
      coming down, I overheard a matter where the jury room was open. One of
17    the jurors, I think, was talking to the bailiff or something, and the juror said
      something like, I think I've heard enough already. Now, I think he was
18    referring to the trial. I think it was a legitimate matter of inquire. If you would
      inquire about that.
19        THE COURT: I guess that's what prompted you to mention this in
      aside to me to make sure to tell jury to keep an open mind until they heard
20    all the evidence.
          [PETITIONER]: At that particular time I really wanted to call a
21    hearing at that time.  But since we're right in the middle of testimony I didn't
      want to interrupt at that point. But I would like to have an inquiry made as to
22    exactly who it was that said it. I mean the door was open. I heard the juror
      say, I couldn't determine – he was talking to a bailiff though. Because the
23    bailiff was saying something like yes, and something like – I couldn't make
      out the words. It was like a joking matter what the bailiff said.
24        THE COURT: You're not referring to Deputy Sichon, are you?
          [PETITIONER]: No, not this deputy.
25        THE COURT: I'll inquire.
          [PETITIONER]: I remember –
26        THE COURT: Somebody made a joke or something.
          [PETITIONER]: Yes.
27        THE COURT: All right.  I'll talk to the bailiff about the matter. I'm not
      going to talk to the jurors at this point. I may inquire further depending on
28    what I find out from the bailiff.

19

United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

> [PETITIONER]: May I say something? Saying something like that while the jury is going down, would it have some kind of prejudicial effect?
> THE COURT: That's rhetorical question. I can't really respond to it. I will make an inquiry of the bailiff about that matter. When did it occur, yesterday afternoon, Mr. Harrell?
> [PETITIONER]: You know, when the jury was coming back down.
> THE COURT: All right.
> [PETITIONER]: And I asked you because I thought that was important, because it sounded like the jurors were, some jurors had been making a decision up there.
> THE COURT: That's certainly not appropriate. I'll inquire of the bailiff, and as I said, if a further inquiry is appropriate, I will do so.

RT at 800-803.

The trial court later put on the record that he had investigated the allegation of juror misconduct and came to the following conclusion:

> I spoke with Deputy McKenzie and relayed your concerns. He said there was nothing of the sort you reported. And, accordingly, it was my decision not to make any further inquiry or to talk to the jurors with respect to your concerns.

*Id.* at 921.  The trial court determined that there was an "insufficient showing to require any further action on the court's part beyond what we've already done." *Id.* at 922.  No separate hearing was conducted on the allegation of juror misconduct until the issue was addressed during petitioner's motion for a new trial hearing.

Petitioner's first claim of abuse of discretion is without merit.  It is well-established that the decision to grant or deny a requested continuance lies within the broad discretion of the trial court, *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964), and that the improper denial of a requested continuance warrants habeas relief only if there is a showing of actual prejudice to petitioner's defense resulting from the trial court's refusal to grant a continuance, *Gallego v. McDaniel*, 124 F.3d 1065, 1072 ( 9th Cir. 1997).  Here, it cannot be said that the trial court abused its discretion in denying petitioner's request for a continuance of the new trial motion hearing in order to obtain juror declarations. Petitioner's allegation was based solely on what he thought he heard an unidentified juror say.  Furthermore, it was not unreasonable for the trial court to decide that obtaining juror declarations was not necessary, especially since Bailiff McKenzie was available to give

**United States District Court**

For the Northern District of California

1   direct testimony and be cross-examined by petitioner on what was or was not said on the

2   day in question.  Finally, it cannot be said that petitioner was prejudiced from the denial of

3   a continuance - there is no indication that the juror declarations would have added much to

4   the record.  *See id.*

5          With respect to petitioner's second claim, it was not unreasonable for the trial court

6   to decide that an investigator was unnecessary to investigate petitioner's allegation of juror

7   misconduct.  Petitioner had the assistance of counsel with his first motion for a new trial.

8   CT at 401.  Since petitioner had the assistance of counsel at that time, it was not

9   unreasonable for the trial court not to appoint an investigator.

10         Clearly established federal law, as determined by the Supreme Court, does not

11   require state or federal courts to hold a hearing every time a claim of juror bias is raised by

12   the parties.  *Tracey v. Palmateer*, 341 F.3d 1037, 1045 (9th Cir. 2003); *see, e.g.*, *Estrada*

13   *v. Scribner*, 512 F.3d 1227, 1241 (9th Cir. 2008) (district court did not abuse its discretion

14   in declining to hold hearing on juror bias where state court's determination was not

15   unreasonable in finding two jurors were not actually biased, and that juror bias could not

16   be presumed based on jurors' honesty during voir dire); Sims v. Rowland, 414 F.3d 1148,

17   1153 (9th Cir. 2005) (trial court need not order a hearing sua sponte whenever presented

18   with evidence juror bias).  *Remmer v United States*, 347 U.S. 227 (1954), and *Smith v.*

19   *Phillips*, 455 U.S. 209 (1982), do not stand for the proposition that any time evidence of

20   juror bias comes to light, due process requires the trial court to question the jurors alleged

21   to have bias.  *Smith* states that this "may" be the proper course, and that a hearing "is

22   sufficient" to satisfy due process.  *Tracey*, 341 F.3d at 1044 (citing *Smith*, 455 U.S. at 217,

23   218).  *Smith* leaves open the door as to whether a hearing is always required and what

24   else may be "sufficient" to alleviate any due process concerns.  *Id.*; *see, e.g.*, *id.* at 1044-

25   45 (concluding that state trial court's decision not to question juror further to obtain names

26   of other jurors and to take additional testimony from them was not contrary, or an

27   unreasonable application of, clearly established Supreme Court precedent).  Clearly,

28   investigation into juror misconduct is at the discretion of the trial court, to be conducted

United States District Court

For the Northern District of California

1   with or without a hearing.  Accordingly, petitioner's claim numbers 4 and 5 are without

2   merit since the trial court did not violate due process by having ex parte communication

3   with Bailiff McKenzie to inquire about what transpired in the jury room or by not

4   questioning jurors at the hearing.  *Id.*

5          With respect to petitioner's third claim that he was unfairly surprised by the

6   prosecution's production of Bailiff McKenzie as a material witness in connection with

7   petitioner's jury misconduct allegations, this claim is without merit.  Petitioner's allegation

8   was that an unidentified juror made an inappropriate comment to a bailiff on December 22,

9   1993.  The bailiff was identified by name by the trial court in the presence of petitioner.  RT

10  at 921.  A declaration from the bailiff was filed with the court and served on petitioner.  CT

11  at 965-966.  Petitioner certainly knew the identity of the bailiff before the motion for new

12  trial hearing.  Since Bailiff McKenzie's testimony refuted petitioner's allegation, the

13  prosecution's decision to present Bailiff McKenzie as a material witness is hardly

14  unexpected.

15         Petitioner's sixth allegation that there were multiple instances of juror misconduct

16  which denied him the right to a fair trial is conclusory and lacks merit.  Petitioner makes no

17  specific allegation of juror misconduct other than the incident discussed above.

18         **2.    Peremptory challenges**

19         Petitioner alleges that he was denied all the statutorily authorized peremptory

20  challenges during jury selection.  Petitioner claims that he faced a "statutory equivalent of

21  a life time" and was therefore entitled to 20 peremptory challenges.  Pet. at 81.  He is

22  mistaken.  Petitioner was facing a term of years and not a life sentence.  Therefore, he

23  was entitled to 10 peremptory challenges during jury selection under California Code of

24  Civil Procedures § 231(b).  The record shows that he exercised all 10 challenges.  *See* RT

25  at 160, 172, 179, 185, 189, 192, 196, 199, 202 and 208.

26         Petitioner's claim that he was denied one peremptory challenge because the tenth

27  dismissal of "Mr. Shamrock" at Reporter's Transcript page 208 cannot be accurate as a

28  juror by that name had already been dismissed.  The court has reviewed the transcript,

United States District Court

For the Northern District of California

1  and finds that the juror dismissed with petitioner's tenth challenge was named Ms. Allenda-

2  Surrence, not Mr. Shamrock.  RT at 205-08.  Contrary to petitioner's claim, the record

3  shows that petitioner was afforded all the peremptory strikes authorized by statute.

4      **3.**     ***Wheeler* motion**

5      Petitioner's final claim with respect with his new trial motion is that the trial court

6  erred in denying petitioner's *Wheeler* motion based on the prosecution's use of a

7  peremptory challenge against a potential juror who was African-American.  Pet. at 65.

8  Under California law, *Wheeler* motions are made in response to an alleged pattern of

9  discriminatory peremptory challenges used to strike potential jurors on the basis of race.

10  *See People v. Wheeler*, 22 Cal. 3d 258, 276-77 (1978).  *Batson*, the federal counterpart of

11  *Wheeler*, provides similar protections against group bias in the exercise of peremptory

12  challenges.  Batson v. Kentucky, 476 U.S. 79, 85-86 (1986).  African-Americans are a

13  cognizable group under both *Wheeler* and *Batson*.  *People v. Catlin*, 26 Cal.4th 81, 116

14  (2001).

15      The Equal Protection Clause forbids the exclusion of jurors by peremptory

16  challenge solely on account of their race.  *Batson*, 476 U.S. at 89.  *Batson* permits prompt

17  rulings on objections to peremptory challenges under a three-step process.  First, the

18  defendant must make a prima facie showing that the prosecutor has exercised peremptory

19  challenges on the basis of race.  *Id.* at 96-97.  That is, the defendant must demonstrate

20  that the facts and the circumstances of the case "raise an inference" that the prosecution

21  has excluded venire members from the petit jury on account of their race.  *Id.* at 96.  If the

22  defendant makes this showing, the burden then shifts to the prosecutor to articulate a

23  race-neutral explanation for striking the jurors in question.  *Id.* at 97.  Finally, the court

24  must determine whether the defendant has carried his burden of proving purposeful

25  discrimination.  *Id.* at 98.  To fulfill its duty, the court must evaluate the prosecutor's

26  proffered reasons and determine whether there was intentional discrimination.  *Lewis v.*

27  *Lewis*, 321 F3d 824, 831 (9th Cir 2003).

28      The findings of the state trial court on the issue of discriminatory intent are findings

United States District Court

For the Northern District of California

of fact entitled to the presumption of correctness in federal habeas review. *See Purkett v. Elem*, 514 U.S. 765, 769 (1995). So are the findings of the state appellate court. *See Mitleider v. Hall*, 391 F.3d 1039, 1050 (9th Cir. 2004); *Williams v. Rhoades*, 354 F.3d 1101, 1108 ( 9th Cir. 2004). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this means that a state court's findings on discriminatory intent are presumed sound unless the petitioner rebuts the presumption by clear and convincing evidence. *Miller- El v. Dretke*, 545 U. S. 231, 240 (2005) (citing 28 U.S.C. § 2254(e)(1)). The petitioner must show the state court's conclusion to be "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Id.* (citing 28 U.S.C. § 2254(d)(2)). Therefore, a federal habeas court can only grant habeas relief "if it was unreasonable to credit the prosecutor's race-neutral explanations for the *Batson* challenge." *Rice v. Collins*, 126 S. Ct. 969, 974 (2006). The standard is demanding, but not insatiable. *Miller-El*, 545 U.S. at 240.

Petitioner made a motion at the close of voir dire alleging that the prosecutor used a "race based peremptory challenge" to remove one of two black jurors. (Pet. 86.) The trial court denied the motion, with the following statement:

> THE COURT: Absolutely. If there is a single juror excluded for an improper question, you are entitled to relief as in the motion you requested.
> Now, I've been carefully observing these jury selection proceedings, and in my view, you've failed to make a prima facie showing. So I'm not going to require the district attorney explain his reasons.
> I will let the record reflect Mr. Knight is a Black gentleman. [The prosecutor] has his own reasons I'm not interested in. I don't think they are required. I'm satisfied, not on a race basis, this is a man who clearly did not want to be here and asked – basically did everything but ask me to excuse him. He wanted to travel to Southern California. And it was clear to me, just from looking at him and from observing his expressions, he was not happy with my ruling, although he was certainly a gentleman. He accepted it was his duty to be here. I understand why [the prosecutor] excused him, given his answers and demeanor. There is no prima facie showing.

RT at 228.

The trial court found that petitioner had failed to make a prima facie showing of racial discrimination and therefore found it unnecessary to question the prosecution as to their motive. The trial court's finding with respect to discriminatory intent is a finding of fact

United States District Court

For the Northern District of California

1  entitled to the presumption of correctness which petitioner must rebut by clear and

2  convincing evidence.  *See Purkett*, 514 U.S. at 769; *Miller- El*, 545 U.S. at 240.  Petitioner

3  has failed to do so.  The trial court found that there was a race-neutral basis for exercising

4  the peremptory challenge against Mr. Knight who exhibited a strong unwillingness to

5  serve on the jury because it would inconvenience his plans to go to Southern California.

6  The trial court was not unreasonable in denying the motion since petitioner failed to

7  demonstrate that the facts and the circumstances of the case "raise an inference" of racial

8  discrimination.  *Batson,* 476 U.S. at 96.  The trial court's conclusion that there were race-

9  neutral grounds for the prosecution to use a peremptory challenge against Mr. Knight was

10  not "an unreasonable determination of the facts in light of the evidence presented"  *Id.*

11  (citing 28 U.S.C. § 2254(d)(2)).

12      Petitioner's claim of trial court error in denying his motion for a new trial on the

13  grounds discussed above is without merit.  Accordingly, the state court's rejection of this

14  claim was not an unreasonable application of clearly established federal law.  *See* 28

15  U.S.C. § 2254(d); *Plascencia v. Alameida*, 467 F.3d at 1198.

16  **G.    Ineffective assistance by appellate counsel**

17      Petitioner claims that his appellate counsel rendered ineffective assistance in

18  violation of the Sixth Amendment by failing to raise certain issues which petitioner believed

19  were arguable on appeal.  For the same reasons discussed above in petitioner's fourth

20  claim, this claim is also without merit as petitioner cannot show how he was prejudiced by

21  counsel's alleged ineffective assistance.  Petitioner was given an opportunity to file a

22  supplemental opening brief with the state court of appeal raising the issues which he

23  contends counsel failed to raise himself.  Pet. at 93.  The state court of appeal addressed

24  the merits of the claims presented in petitioner's handwritten brief, and rejected eight of

25  the nine claims on the merits.  Answer Ex. 9 at 15-17.  The only claim that was rejected for

26  being "entirely handwritten and practically illegible" was the claim that petitioner's right to

27  due process was violated by the trial court's refusal to admit rebuttal evidence to show that

28  petitioner was actually a victim of a police conspiracy with the victim acting as an

United States District Court

For the Northern District of California

1   undercover police officer to entrap him into committing burglary and robbery.  *Id.* at 17.

2   The state appellate court found this claim "doubtful" and "lack[ing] evidence to support it."

3   *Id.*  It also denied on the merits petitioner's closely related claim that he was denied due

4   process when the trial court excluded evidence of police entrapment.  *Id.*  The state

5   appellate court denied this claim based on the overwhelming evidence, including

6   petitioner's own written confession and testimony at trial, such that "no conceivable

7   prejudice could have resulted from the exclusion of the purported evidence."  *Id.*

8   Therefore, it cannot be said that petitioner would have had a more favorable outcome on

9   this claim but for counsel's failure to raise the claim on appeal.  Accordingly, the state

10  court's rejection of this claim was neither contrary to, nor an unreasonable determination

11  of, clearly established Supreme Court precedent.  *See* 28 U.S.C. § 2254(d).

12  **H.     Failure to give limiting jury instructions**

13          Petitioner claims that the trial court's "failure to sua sponte instruct [the] trial jury

14  under the *Duncan* doctrine regarding guilt phase witness stand confession obtained in

15  violation of [petitioner's] Fifth Amendment self-incrimination rights while self-represented

16  and appearing in court without the assistance of counsel constitutes prejudicial error and

17  [is] reversible per se."  Pet. at 114.  In other words, petitioner claims that he gave his

18  witness stand confession without being advised of his Fifth Amendment right against self-

19  incrimination, which therefore required the trial court under *People v. Duncan*, 204

20  Cal.App. 3d 613, 619-21 (1998), to instruct the jury that the confession could be

21  considered only on the issue of petitioner's credibility.  Pet. at 115-16.

22          First of all, this claim fails to state a cognizable claim in federal habeas because

23  petitioner's claim is only grounded in state law, i.e., the trial court's failure to give

24  instructions under *People v. Duncan,* which is state law precedent.  A challenge to a jury

25  instruction solely as an error under state law does not state a claim cognizable in federal

26  habeas corpus proceedings.  *See Estelle*, 502 U.S. at 71-72.

27          Furthermore, respondent presents evidence showing that petitioner was well aware

28  of his right against self-incrimination under the Fifth Amendment.  Petitioner was the first

United States District Court

For the Northern District of California

1    defendant in Alameda County to take advantage of the decision in *Faretta v. California*,

2    422 U.S. 806 (1975), to represent himself at trial.  RT at 932.  Petitioner represented

3    himself in previous trials.  *See In re Harrell*, 2 Cal. 3d 675 (1970); *People v. Harrell*, 207

4    Cal.App. 3d 1439 (1989).  In moving to represent himself for the trial at issue in the instant

5    petition, petitioner signed a "Petition to Proceed in Propria Persona" which included the

6    following statement: "I understand that I have the right to testify at the time of trial, but that

7    I do not have to testify unless I so desire, and cannot be compelled to testify."  CT at 954.

8    It is clear that petitioner was aware of his Fifth Amendment right against self-incrimination

9    during the course of the trial.  Petitioner is not entitled to federal habeas relief on this claim

10   as the state court's rejection of this claim was not an unreasonable application of clearly

11   established federal law.  *See* 28 U.S.C. § 2254(d); *Plascencia v. Alameida*, 467 F.3d at

12   1198.

13   **I.     Involuntary statements**

14          Petitioner claims that his due process rights were violated because his post-arrest

15   statement was involuntary and should not have been admitted at trial.  In addition,

16   petitioner alleges that his witness stand confession was "compelled" by the admission of

17   his post-arrest confession and was therefore "fruit of the poisonous tree" of the prior

18   erroneous decision.  Pet. at 120.

19          Involuntary confessions in state criminal cases are inadmissible under the

20   Fourteenth Amendment.  *Blackburn v. Alabama*, 361 U.S. 199, 207 (1960).  The

21   voluntariness of a confession is evaluated by reviewing both the police conduct in

22   extracting the statements and the effect of that conduct on the suspect.  *Miller v. Fenton*,

23   474 U.S. 104, 116 (1985); *Henry v. Kernan*, 197 F.3d 1021, 1026 (9th Cir. 1999).  Absent

24   police misconduct causally related to the confession, there is no basis for concluding that a

25   confession was involuntary in violation of the Fourteenth Amendment.  *Colorado v.*

26   *Connelly*, 479 U.S. 157, 167 (1986); *Norman v. Ducharme*, 871 F.2d 1483, 1487 (9th Cir.

27   1989), *cert. denied*, 494 U.S. 1031, *and cert. denied*, 494 U.S. 1061 (1990).

28          To determine the voluntariness of a confession, the court must consider the effect

United States District Court

For the Northern District of California

that the totality of the circumstances had upon the will of the defendant. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226-27 (1973). "The test is whether, considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." *United States v. Leon Guerrero*, 847 F.2d 1363, 1366 (9th Cir. 1988) (citing *Haynes v. Washington*, 373 U.S. 503, 513-14 (1963)). "Coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Connelly*, 479 U.S. at 167. A confession is only involuntary if the police use coercive activity to undermine the suspect's ability to exercise his free will. *Derrick v. Peterson*, 924 F.2d 813, 818 (9th Cir. 1990), <u>cert. denied</u>, 502 U.S. 853 (1991).

During trial, petitioner filed a motion to suppress his statement to the police, claiming it was involuntary. Sergeant Glen Tomek, the officer who took petitioner's post arrest statement, testified that he gave petitioner a *Miranda* warning*, see Miranda v. Arizona*, 384 U.S. 436 (1966*),* before taking the statement and that petitioner signed a written *Miranda* waiver. RT at 361-63. Sergeant Tomek stated that he wrote a summary of the statement and that petitioner made corrections to the statement before signing it. *Id.* at 363-64. Sergeant Tomek denied that he either threatened petitioner or made promises of leniency. *Id.* at 368-74. The trial court denied petitioner's motion and found the statement voluntary:

> And that being the case, to the extent that there are any significant conflicts between the [petitioner's] testimony and that of Sergeant Tomek, I believe the sergeant and I disbelief [sic] the [petitioner], a convicted felon.
> Having considered the evidence presented, it's my conclusion that the [petitioner's] statement was voluntary in a constitutional sense. He was duly acknowledged and made a knowing, intelligently waiver of his constitutional rights.
> The motion to suppress the confession is denied.

*Id.* at 384-85.

A district court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and

28

**United States District Court**

For the Northern District of California

1  convincing evidence.  28 U.S.C. § 2254(e)(1).  For purposes of § 2254(e)(1), factual

2  issues are defined as "basic, primary, or historical facts:  facts in the sense of a recital of

3  external events and the credibility of their narrators."  *Coombs v. Maine*, 202 F.3d 14, 18

4  (1st Cir. 2000) (citations and internal quotation marks omitted).

5       Petitioner has failed to rebut the credibility of Sergeant Tomek's testimony by clear

6  and convincing evidence.  During the motion to suppress hearing, petitioner claimed that

7  Sergeant Tomek used "implied little psychological inducements" to obtain his confession

8  by threatening to file charges involving sexual misconduct unless he gave a statement.

9  RT at 381.  Petitioner claimed that Sergeant Tomek implied that the outcome of the

10  interview would determine what the charges would be.  *Id.*  However, Sergeant Tomek

11  testified that petitioner had already been formally charged before he was interviewed.  RT

12  at 369.  Petitioner has failed to present clear and convincing evidence that Sergeant

13  Tomek acted coercively to undermine the petitioner's ability to exercise his free will.

14  *Derrick v. Peterson*, 924 F.2d at 818.  The fact that petitioner "felt pressured" is not

15  sufficient to show that his will was overborne by police coercion.  RT at 384.  Accordingly,

16  the trial court's determination of the credibility of Sergeant Tomek's statement is entitled to

17  deference.  28 U.S.C. § 2254(e)(1).  Because there was no error in admitting the written

18  statement, there is no merit to petitioner's claim that his witness stand confession is a "fruit

19  of the poisonous tree" of the prior erroneous decision.  Petitioner is not entitled to federal

20  habeas relief on this claim, and the state court's rejection of this claim was not an

21  unreasonable application of clearly established federal law.  *See* 28 U.S.C. § 2254(d);

22  *Plascencia v. Alameida*, 467 F.3d at 1198.

23  **J.      Challenge to constitutionality of 1975 prior conviction**

24       Petitioner claims that the trial court erred in denying his motion to strike his 1975

25  prior conviction on the ground that he was denied his right to counsel during the prior

26  conviction proceedings.

27       A petitioner generally may not attack the constitutionality of a prior conviction used

28  to enhance a later sentence.  "[O]nce a state conviction is no longer open to direct or

United States District Court

For the Northern District of California

1  collateral attack in its own right because the defendant failed to pursue those remedies

2  while they were available (or because the defendant did so unsuccessfully), the conviction

3  may be regarded as conclusively valid.  If that conviction is later used to enhance a

4  criminal sentence, the defendant generally may not challenge the enhanced sentence

5  through a petition under § 2254 on the ground that the prior conviction was

6  unconstitutionally obtained."  *Lackawanna County Dist. Attorney v. Coss*, 532 U.S. 394,

7  403-04 (2001) (citation omitted); *see also United States v. Martinez-Martinez*, 295 F.3d

8  1041, 1043-44 (9th Cir. 2002) (bar against collateral attacks on prior convictions also

9  applies where sentencing court declined to <u>reduce</u> sentence based on circumstances of

10  prior conviction).  The only exception to the rule barring challenges to prior convictions

11  used to enhance current sentences is that a petitioner may challenge a prior conviction on

12  the ground that there was a failure to appoint counsel in that case in violation of the Sixth

13  Amendment.  *Coss*, 532 U.S. at 404.

14      Petitioner did not timely challenge the validity of his 1975 convictions in a direct or

15  collateral challenge to those proceedings and therefore cannot now challenge the

16  constitutionality of the prior conviction in the instant § 2254 habeas petition.  *Coss*, 532

17  U.S. at 403-04.  Furthermore, petitioner's case does not warrant the exception under

18  *Coss*, *id.* at 404, because petitioner opted to represent himself during the 1975

19  proceedings which did not violate his Sixth Amendment right to counsel.  The state court's

20  rejection of this claim was neither contrary to, nor an unreasonable determination of,

21  clearly established Supreme Court precedent.  *See* 28 U.S.C. § 2254(d).

22  **K.    Right to be present at every stage of the trial**

23      Petitioner also claims that he was denied his "right to counsel and to be present

24  during every critical stage of the trial and criminal proceedings" and that he "did not

25  effectively waive his right to the assistance of counsel or to be present during the crucial

26  trial judge selection proceedings in question."  Pet. at 127.  First of all, petitioner does not

27  make any specific factual allegations regarding the denial of his right to counsel.

28  Furthermore, in light of the fact that petitioner opted to represent himself in the underlying

United States District Court

For the Northern District of California

1   criminal proceedings, there is no merit to this claim.  Petitioner cannot now claim denial of

2   his right to appointment of counsel when he opted to exercise his Sixth Amendment right

3   to self-representation under *Faretta v. California*, 422 U.S. 806, 832 (1975).  Nor does

4   petitioner allege that the waiver of his right to counsel was other than knowing and

5   intelligent.  *Id.* at 835.

6          Petitioner's second claim that he was denied his right to be present during the

7   "crucial judge selection proceedings" is without support.  Due process protects a

8   defendant's right to be present "at any stage of the criminal proceeding that is critical to its

9   outcome if his presence would contribute to the fairness of the procedure."  *Kentucky v.*

10  *Stincer*, 482 U.S. 730, 745 (1987).  Petitioner appears to be believe that there was a

11  "judge selection proceeding" that took place without his presence.  However, there is no

12  evidence to support this allegation.  Petitioner was present at each and every motion to

13  disqualify judge proceedings for his underlying conviction, including the motions to

14  disqualify judges Goodman, Sarkisian, and Marguiles.  CT at 104, 111, 172 & 279.

15  Petitioner fails to identify any other proceeding that took place beyond those on the record

16  to support this claim.  Accordingly, the state court's rejection of this claim was not an

17  unreasonable application of clearly established federal law.  *See* 28 U.S.C. § 2254(d);

18  *Plascencia v. Alameida*, 467 F.3d at 1198.  Petitioner is not entitled to relief on this claim.

19  **L.     Challenge to constitutionality of 1983 prior conviction**

20         Petitioner's final claim challenges the constitutionality of his prior 1983 conviction

21  used to enhance his sentence.  For the same reasons petitioner's challenge to his 1975

22  prior conviction is invalid, this claim also fails.  *See supra* 28-29; *Coss*, 532 U.S. at 403-04.

23  Petitioner is not entitled to federal habeas relief on this claim.

24

25                                          **CONCLUSION**

26         For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**.  The

27  clerk of the court shall terminate all pending motions, enter judgment for respondent, and

28  close the file.

31

**IT IS SO ORDERED.**

Dated: September 22, 2008

_____
PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\HC.00\Harrell2516_denyHC.HHH.wpd

**United States District Court**
For the Northern District of California

32